**UNITED STATES of America,**
**Appellee,**

v.

**John MIGUEL, Appellant.**

**No. 143, Docket 28914.**

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1964.

Decided Jan. 22, 1965.

Frederic A. Johnson, New York City, and Rudolph Lion Zalowitz, Elizabeth, N. J., for appellant.

Robert M. Morgenthau, U. S. Atty., for appellee; Daniel Donnelly and Peter Fleming, Jr., Asst. U. S. Attys., of counsel.

Before SWAN, WATERMAN and MOORE, Circuit Judges.

SWAN, Circuit Judge:

This is an appeal from a judgment of conviction by verdict of the jury upon a two-count indictment filed October 3, 1963 which charged violations of the federal narcotics laws, 21 U.S.A. §§ 173, 174, committed on September 23 and 24, 1963. Count one relates to the violation on September 23 and count two to the violation on September 24. The trial took place in March 1964. On March 31 appellant was sentenced to five years imprisonment on each count, sentences to be served concurrently.

I. *The evidence is sufficient to support the verdict*

Having had a tip from a person not named, two agents of the Bureau of Narcotics, Bailey and Kreppein, met one Charles West, in lower Manhattan, about 8 P.M. on September 23, 1963. After a conversation, West accompanied the agents in their car to 147th Street, between Lenox and Seventh Avenue. There West was searched with his con-

sent. He had a roll of $130 and some small change but no narcotics. West left the agents and they saw him enter the Peacock Bar at 148th Street and Eighth Avenue. After a few minutes West returned and spoke with the agents. As they drove past the Peacock Bar they saw Miguel sitting inside the bar and saw West re-enter. Shortly thereafter, on the sidewalk in front of the bar they saw West paying money to Miguel, who put it in his pocket. Miguel then took a taxi-cab which the agents followed. He entered the lobby of an apartment building at 630 Lenox Avenue through the northern entrance. Agent Bailey entered the lobby through the southern entrance, when the door was opened by a woman coming out. Miguel was not in sight but Bailey saw the elevator rise to the sixteenth floor. Bailey opened the lobby door to admit Kreppein, and a few minutes later they saw the elevator rise to the sixteenth floor and start to descend. When the elevator stopped at the lobby floor Miguel stepped out. He was immediately arrested and searched. In his pockets were fifty glassine envelopes containing heroin. He admitted that he had more heroin in his apartment but refused to identify the apartment number. The next morning he told the agents it was 16-L.

## II. Arrest of appellant was legal

 Since the agents had no arrest warrant for Miguel he contends that his arrest was illegal. But what the agents had themselves observed of the transactions between Miguel and West and of Miguel's subsequent conduct, interpreted in the light of West's prior disclosures to the agents, was ample evidence to justify their belief that a narcotics violation had already been or was about to be committed.[1]

## III. Denial of Miguel's motion to suppress evidence obtained on search of his person after arrest

 This motion was denied by Judge Palmieri in January 1964 after a hearing. The motion was based on the theory that the lobby of the apartment building at 630 Lenox Avenue was within the "curtilage" of appellant's residence.[2] As stated in Care v. United States, 10 Cir., 231 F.2d 22, 25, cert. den. 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461, whether a given area is within the protection of one's dwelling depends upon a number of factors of which location is but one. We have been cited to no authority which would include the lobby of a multi-tenanted apartment house within the "curtilage" of each tenant. Such authority as there is points the other way. We agree with Judge Palmieri's decision.

## IV. Claim that search of apartment 16-L was illegal

 It is unnecessary to decide this contention. Since the sentences were to

---

1. It is well established that hearsay evidence such as declarations of an informer is admissible on the question of probable cause to arrest. See United States v. Li Fat Tong, 2 Cir., 152 F.2d 650, 652; United States v. Heitner, 2 Cir., 149 F.2d 105, 106; United States v. Elgisser, 2 Cir., 334 F.2d 103, 110–111; Ker v. California, 374 U.S. 23, 36, 83 S. Ct. 1623, 10 L.Ed.2d 726. On their initial encounter West had told the agents that it was his practice to buy two bundle lots of heroin from Miguel for $130 at a bar near 149th and 8th Avenue and that he intended to do so that evening. Later, when he returned from the bar, he told the agents that Miguel was there and would go to his place at 630 Lenox Avenue to get the heroin which he would sell to West for $130.

These statements, corroborated by the agents' own observations of West and Miguel, were admissible for the purpose of establishing probable cause. That was their sole use.

Appellant's arrest being legal anything found on his person may be used against him. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145.

2. Miguel did not own the apartment on the sixteenth floor. The tenant was Miss. Almerio Lewis, who allowed appellant to stay there from time to time and keep clothes there. This gave him standing under Rule 41(e) Fed.Rules of Cr.Proc. to object to a search of the apartment of Miss Lewis. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. No search of her apartment was made until September 24.

be served concurrently, appellant's imprisonment will be the same if the sentence on count one of the indictment is affirmed, even though the sentence on count two were to be reversed. We note, however, that since the arrest was valid, there is no "poisonous tree" to bear this fruitful search. Moreover, even assuming appellant has standing to object to that search, cf. Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed.2d 441, the circumstances and manner of the agents' peaceful entry were justified by appellant's prior deceptive statement that he lived there alone. Thinking that, and having a key, they could properly consider that knocking and announcing themselves would be "useless gestures." In any case, these they did as soon as it appeared that the apartment was occupied.

## V. *Failure of the prosecution to call West as witness*

■ Appellant complains vehemently of the Government's failure to call West as a witness at the hearing on the motion to suppress and at the trial. We hold no error was committed.

At the hearing to suppress evidence Agent Bailey identified West by name, described his physical appearance, and gave the address where Bailey met him, adding that his present address was unknown. Bailey testified that West told him he had been an addict for twenty-seven years and had obtained heroin in the vicinity of 149th Street. Judge Palmieri ruled that this was relevant to a showing of probable cause, but reserved decision as to Miguel's right to obtain the presence of West. Appellant did not demand the production of West. This is fatal to its claim that the Government was obligated to produce him. See United States v. Gernie, 2 Cir., 252 F.2d 664, 668, cert. den. 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073; United States v. Paroutian, 2 Cir., 319 F.2d 661, 663–664, cert. den. 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426.

The trial began on March 10, 1964. On the day the Government rested its case-in-chief the Assistant United States Attorney learned that West was to be sentenced in a state court the following morning. He informed the trial judge of this fact and the judge specifically advised defense counsel that "we will produce or have the Government produce Mr. West." Defense counsel excepted to the proposal to produce West on the ground that "the Government owed us the duty of summoning him before they closed the case." When the defense rested, the trial judge repeated his earlier statement as to West's availability but defense counsel refused the renewed opportunity to examine West. Appellant's contention that the Government was obliged to call West as its own witness cannot be supported. United States v. Holiday, 2 Cir., 319 F.2d 775, 776; United States v. Colletti, 2 Cir., 245 F.2d 781, 782, cert. den. sub nom. Russo v. United States, 355 U.S. 874, 78 S.Ct. 125, 2 L.Ed.2d 78.

## VI. *Alleged delay in arraignment*

■ Miguel was arrested at 10:45 P.M., September 23. He was arraigned the following day at 1:00 P.M. Appellant contends that the delay rendered inadmissible any admissions made during that period. The contention is overruled. Appellant's arraignment was not prejudicially delayed. After his arrest he was lodged at a local precinct until shortly after 1:00 A.M. on September 24, when he was transferred to the Federal House of Detention. Between 9:00 and 9:30 A.M. he was taken from the House of Detention to the office of the Bureau of Narcotics at 90 Church Street where he was processed. At approximately 10:30 A.M. he was removed to the courthouse and questioned by an Assistant United States Attorney.

The overnight detention was proper in the absence of an available magistrate. United States v. Ladson, 2 Cir., 294 F.2d 535, 537 (note 1), cert. den. 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789; United States v. Vita, 2 Cir., 294 F.2d 524, 529 (note 1), cert. den. 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788. The Ladson case shows that the time devoted to proc-

essing appellant at 90 Church Street was usual and necessary in the ordinary course of pre-arraignment procedures. As no statements made by appellant during the subsequent period prior to arraignment were used against him, he was not prejudiced by them and they need not be considered. See United States v. Guerra, 2 Cir., 334 F.2d 138, 145 (1964), cert. den. 85 S.Ct. 337 (U.S. Dec. 7, 1964).

VII. *Alleged deprivation of counsel*

It will suffice to say that this is not supported by the record. On the night of September 23 before being taken to the Federal House of Detention he telephoned Miss Lewis that he was under arrest and asked her to notify his counsel, which she did.

VIII. *The claim of double jeopardy*

■ Miguel was indicted for violations of the federal narcotics laws prior to the filing of the indictment on which he now stands convicted. On the prior indictment trial was commenced before a judge and jury but was terminated before completion by the declaration of a mistrial by the judge upon his own motion. Miguel moved to dismiss the indictment on the ground that the uncompleted trial constituted former jeopardy. This motion was granted. See Judge Croake's opinion dated June 28, 1963 which appears as an exhibit attached to appellant's brief.

In point 1 of appellant's brief he claims that because in a different case a different judge dismissed an indictment against appellant after declaring a mistrial due to the discovery that a Government witness had testified erroneously so also is appellant here "entitled to acquittal by reason of his being subjected to former jeopardy through the misconduct of the Government in depriving him of due process in the first instance." The argument is completely without merit. Here there has been no mistrial declared and, accordingly, no former jeopardy. Cf. Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901; United States v. Tateo, 377 U.S. 463, 84 S.Ct.

1587, 12 L.Ed.2d 448. Moreover, there was neither false testimony nor misconduct on the Government's part. The claim of double jeopardy is denied.