John E. OELKE, Appellant,

v.

UNITED STATES of America, Appellee.

Leon T. GRAVES, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 21086, 20864.

United States Court of Appeals Ninth Circuit.

Dec. 29, 1967.

Certiorari Denied April 22, 1968.

See 88 S.Ct. 1420, 1421.

Russell E. Smith, District Judge, dissented.

2. 29 C.F.R. § 102.67.

Arthur Katayama (argued), Los Angeles, Cal., Donald S. Emmer, Los Angeles, Cal., for appellant.

Wm. M. Byrne, Jr., U. S. Atty., Manuel L. Real, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Chief, Criminal Division, Michael Heuer, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and SMITH*, District Judge.

### ORDER WITHDRAWING OPINION AND OPINION

It appearing to this court that its majority opinion in the above entitled matters, dated September 20, 1967, should be withdrawn and revised;

Now, therefore, the said majority opinion dated September 20, 1967, in the above entitled matter, is hereby withdrawn; and a new majority opinion is ordered to be filed, together with the original dissent, as follows:

BARNES, Circuit Judge:

Leon Thais Graves and John Edward Oelke were two of five defendants joined in an eight count indictment involving

---

* Hon. Russell E. Smith, United States District Judge, Missoula, Montana, sitting by designation.

the concealment, transportation and sale of marijuana, after illegal importation. The first six counts of the indictment relate to alleged possession or sale by one or more of the three other defendants of three quantities of marijuana (one on June 7, 1965 and two on June 10, 1965), 21 U.S.C. § 176a.

Counts 7 and 8 related to these appealing defendants alone, and to a different date (June 16, 1965), and to marijuana different from that referred to in Counts 1 to 6.

On August 2, 1965, the case was transferred for trial to Judge Roger D. Foley, of Nevada, sitting by assignment in the Southern District of California, Central Division (now the Central District of California). The defendant De Jong's motion for separate trial was renewed and denied without prejudice. (C.T. 35). A jury was then empaneled.

Previous to the start of the trial De Jong, and no other defendant, had moved for a separate trial. This had been denied on July 26, 1965.

On August 2, 1965, two defendants, Alan Hann Oelke and Gary Lee Tronmpeter, withdrew their pleas of not guilty, and entered pleas of guilty to Counts 2, 7 and 8, and to Count 1, respectively, after trial had commenced.

After such change of pleas, the jury trial was continued for one day, "for trial of De Jong, Graves and John Oelke only." [1]

On August 3, 1965, Judge Foley, on his own motion,[2] granted a separate trial to Oelke and Graves on Counts 7 and 8,[3] setting it for hearing on August 4, 1965 at 1:30 P.M. before a different jury. He continued with the trial of De Jong on Counts 1 and 2 on August 3, and the forenoon of August 4, 1965, before the same jury—then continued the De Jong trial to August 5, 1965 before the same original jury.

On August 4, 1965, at 1:30 P.M., Judge Foley empaneled the new jury to try Oelke and Graves, and continued their case for further trial to August 5, 1965 at 1:30 P.M.

On August 5, 1965, appellants Oelke and Graves signed waivers of jury trial (C.T. 26, 27), and the trial proceeded as to them without a jury on August 5th, 6th, 9th, 10th and 11th, 1965. Defendant Oelke's motion for acquittal as to Count 7 was granted at the end of the government's case. Both defendants were convicted by the trial judge— Graves as to Count 7 and Oelke as to Count 8.

Jurisdiction below rested on 21 U.S.C. § 176a, and rests here on 28 U.S.C. § 1251.

On this appeal, each appellant raises the question of double jeopardy, and Oelke raises the additional question of the admissibility of evidence obtained by search after arrest made after an entry into his home, made without permission, search warrant or warrant for arrest.

### I.   *Double Jeopardy*

We recapitulate that there were originally five defendants answering ready for a jury trial on August 2, 1965; four were left when Tronmpeter pleaded guilty. The jury was then empaneled. Alan Oelke then entered his plea of guilty, leaving three defendants. De Jong had previously been denied a severance, because his acts were related to those of Alan Oelke, but not to the other defendants. With Alan Oelke out of the case, when defendant De Jong renewed his motion, after the jury had been picked and sworn (but before any testimony had been received, other than the stipulation mentioned in n. 3, supra), the

---

1. We have heretofore reversed the conviction of the defendant De Jong upon the grounds of an improper cross-examination by the prosecution, remanding the matter for a second trial. (De Jong v. United States, 381 F.2d 725, 9th Cir., decided July 17, 1967.)

2. See affidavit of Oelke's counsel in support of Motion for Leave to File a Writ of Prohibition, p. 2, lines 10–21.

3. This was on August 3, 1965, after a stipulation of facts was filed, signed by the government, Oelke and Graves and their counsel.

court properly granted his motion for severance,[4] and tried De Jong alone before the jury originally empaneled to try De Jong, Graves and the two Oelkes.

A new jury was necessarily empaneled the next day to try John E. Oelke and Graves, if the separation of De Jong's case was proper.

The sole question before us as to this issue is whether jeopardy attached under the Fifth Amendment when the first jury was sworn, with the result that appellants were placed twice in jeopardy when the second jury was sworn to try them.

We hold they were not placed twice in jeopardy.

In Wade v. Hunter, 336 U.S. 684 at 688–689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), the Supreme Court stated:

"The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. * * *

"When justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination. * * * * "

This theory goes back to United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824). It was followed, and the exception to the rule appellants urge upon us was recognized as lately as 1961, in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901.

Here the existence of "compelling reasons," (the language used by Mr. Justice Frankfurter in *Gori*) as viewed by the trial judge "who is best situated intelligently to make such a decision," that "the ends of substantial justice cannot be attained without discontinuing the trial" is clearly evident. Thus "a mistrial may be declared without defendant's consent and even over his objection, and he may be tried consistently with the Fifth Amendment." 367 U.S. at 368, 81 S.Ct. at 1526.

■ There are several well recognized exceptions to the general rule, the principal ones being where the first jury is unable to agree, United States v. Perez, supra; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1891), where a juror swears falsely on voir dire, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), and where a juror, the court, or an accused becomes ill, incapacitated, or unavailable, United States v. Potash, 118 F.2d 54 (2d Cir. 1941), cert. den. 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540.

■ As we have heretofore said, where the trial court with reason dismisses a jury after the jury has been empaneled, and before verdict, it does not, per se, constitute double jeopardy. "A defendant who pleads double jeopardy has the burden of proving abuse of [the court's] discretion." Himmelfarb v. United States, 175 F.2d 924 at 932 (9th Cir. 1949), particularly n. 2. Cf. also United States v. Miguel, 340 F.2d 812 (2d Cir. 1965); Killilea v. United States, 287 F.2d 212 (1st Cir. 1961); Crawford v. United States, 109 U.S.App.D.C. 219, 285 F.2d 661 (1960); Brewster v. Swope, 180 F.2d 984 (9th Cir. 1950). The statement of this rule by the Court of Appeals for the District of Columbia Circuit in Pratt v. United States, 70 App.D.C. 7, 102 F.2d 275, 280 (1939), is especially appropriate:

"There is no better settled rule than that courts of justice may discharge a jury and order subsequent trial with no right in the defendant to contend that his constitutional rights have been invaded. This action has been taken in the past for many reasons that have manifested themselves, and will be taken in the future for many other proper reasons which will manifest

4. De Jong was not named as a defendant in Counts 7 and 8.

themselves, in the administration of justice."

Cf. also United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

Without discussing the large number of cases establishing that appellants' pleas of double jeopardy are not valid under the circumstances here existing, appellants cite in support of their position: Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1962), and Cornero v. United States, 48 F.2d 69, 74 A.L.R. 797 (9th Cir. 1931). In each, the dismissals of the original indictments were for the convenience of the prosecution, or its witnesses. In *Tateo,* the Supreme Court differentiated *Downum* specifically (377 U.S. at 467, 84 S.Ct. 1587). A possible reason existed in *Downum* and *Cornero* why jeopardy should attach: namely, the possibility of the unjustified harassment of citizens due to the whims of a prosecuting officer. The same reason would not apply to the considered judgment of a trial judge presented with "unforeseeable circumstances" in the trial of a criminal case involving multiple defendants.

■ Nor is this a case where there was false testimony or misconduct on the government's part. United States v. Miguel, supra, 340 F.2d at 816. We hold no double jeopardy existed.[5]

## II. *Inadmissibility of Evidence*

Appellant John E. Oelke's second point relates to alleged inadmissibility of evidence (Exhibit 3: 2,734.065 grams of marijuana) obtained by search, after arrest of John Oelke, in the closet in the apartment which officers entered without permission, search warrant or warrant for arrest.

John Oelke was arrested on June 16, 1965, at apartment 4, 7102 La Cienega Boulevard, Los Angeles, California, where he lived with his family, including his brother Alan Oelke.

■■ If appellant is correct in his contention that he was arrested without probable cause, it is elementary that the search and seizure of the marijuana was illegal, and that the seized marijuana was inadmissible in evidence.

"Our basic problem, then, is to determine whether the arrest was without probable cause. 'Probable cause exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they have had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' Draper v. United States, 358 U.S. 307 [, 79 S.Ct. 329, 3 L.Ed.2d 327] (1959). See also Brinegar v. United States, 338 U.S. 160 [, 69 S.Ct. 1302, 93 L.Ed. 1879] (1949); Carroll v. United States, 267 U.S. 132 [, 45 S.Ct. 280, 69 L.Ed. 543] (1925)." Garcia v. United States, 381 F.2d 778 (9th Cir. 1967).

■ If there was probable cause for this arrest, the search, if reasonable, incidental and contemporaneous to a lawful arrest, was likewise proper. Preston v. United States, 376 U.S. 364, 367, 84 S. Ct. 881, 11 L.Ed.2d 777 (1964); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1946). The government summarizes the evidence as to probable cause as follows:

"Agent Sherman testified at the trial * * * [that] prior to the arrest, he

5. The inherent difficulty in defendants' position is that under it, whenever there are multiple defendants and one properly exercises his constitutional right to plead guilty or waive a jury trial, and the effect of the exercise of that right is to change the respective relative positions of the remaining defendants, then to protect the rights of one or more of the remaining defendants either they, or some one or more other defendants must be freed, and not prosecuted for their alleged crime.

This is a perfect example of "the total failure of justice" which Judge Story spoke of in United States v. Coolidge, 25 Fed.Cases, No. 14,858, pp. 622, 623, 2 Gall. 364, which was mentioned with approval in Logan v. United States, supra, and followed by this court in Himmelfarb v. United States, supra.

was advised by Agent Harrison D. Paulus that on June 15, 1965, informant Brucker had placed a phone call to the Oelke residence and had made arrangements for the purchase of marihuana to take place on June 16, 1965 [R.T. 447]. On June 16, Agent Sherman was advised by other agents on the radio that a team of narcotic agents had observed Brucker meet with John Oelke on Glenway in the vicinity of the Oelke apartment and that the two had entered the apartment and had a conversation which was monitored by the agents [R.T. 447]. Agent Sherman was further advised by radio on June 16 that Alan Oelke and appellant Graves had made a delivery of marihuana to Brucker in the garage on Glenway near the apartment [R.T. 448]. Agent Sherman then entered the apartment, where he found John Oelke in a closet in the bedroom [R.T. 426]. Agent Sherman found in the same closet, at the time of the arrest, 2,734.065 grams of marihuana which later became Government's Exhibit 3 at the trial below [R.T. 426–428].

"It is submitted that these facts speak for themselves and that probable cause for the arrest of John Oelke was present at the time when Agent Sherman arrested him. It is well established that hearsay evidence (such as the information which Agent Sherman received from the other agents) is admissible on the question of probable cause to arrest.

> Ker v. [State of] California, 374 U.S. 23, 36 [83 S.Ct. 1623, 10 L.Ed. 2d 726] (1963); United States v. Miguel, 340 F.2d 812, 814 (2 Cir. 1965).

"These reports, given to Agent Sherman by other agents including Agent Paulus on June 15 and 16, 1965, would support a reasonable belief on Agent Sherman's part that John Oelke was then engaged with his brother Alan in a set of acts designed to result in a sale of marihuana to informant Brucker. Thus, the arrest of John Oelke was supported by probable cause and

was lawful." (Appellee's Brief, pp. 20–21.)

We agree with the government that irrespective of Agent Sherman's knowledge of what had occurred in the nearby garage between officers and other defendants, Agent Sherman had probable cause to arrest John E. Oelke, within the Supreme Court definition of probable cause hereinabove recited in the *Garcia* case. The search was reasonable.

Affirmed.

RUSSELL E. SMITH, District Judge (dissenting).

Reluctantly I dissent. The defendants were fairly tried, and fairly convicted. I think they were not prejudiced by what was done. I think the rule should be that a defendant may not successfully claim double jeopardy in cases where a trial is interrupted unless it appears that the purpose of the interruption was to give some advantage to the prosecution or that the defendant has suffered some prejudice from it. I would not presume prejudice from the fact that the trial is not completed with the jury initially impanelled. The inconveniences suffered by a defendant in attending a partial trial, and later a full trial, I would subordinate to the social need for determinations of guilt where guilt exists. These are the reasons for my reluctance.

Now the reason for my dissent: As I read the opinions of the Supreme Court from United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824) down to United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), I am compelled to the conclusion that jeopardy does attach unless the interruption of the trial is due to some urgent circumstance or unless the ends of justice or an overriding public interest require its interruption, or unless it can be said that the interruption was for the benefit of the accused. The interruption in this case was not for the benefit of these appealing defendants. As I see it, there were no urgent circumstances here and the ends of justice would have been

as well served by continuing the trial as to these defendants and interrupting it as to defendant De Jong. He would have been in no position to assert double jeopardy.